UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-60036-Civ-TORRES

CONSENT CASE

FREDNEL ST. GEORGE,

    Plaintiff,

vs.

ADVANCE STORES COMPANY,
INC., d/b/a ADVANCE AUTO PARTS,

    Defendants.

_____/

**ORDER GRANTING DEFENDANT'S
MOTION FOR FINAL SUMMARY JUDGMENT**

This matter is before the Court on Defendant Advance Stores Company, Inc., d/b/a Advance Auto Parts' Motion for Summary Judgment as to Plaintiff Frednel St. George's claims [D.E. 53]. The Court has reviewed the motion, response, reply, relevant authorities, supplemental filings, and record evidence submitted in support for or in opposition to the motion. Based upon a thorough review of the record, we find that there are no genuine issues of material fact to preclude final summary judgment. For the following reasons, the final summary judgment motion will be **GRANTED**.

*I. BACKGROUND*

Defendant, Advance Stores Company, Inc., d/b/a Advance Auto Parts ("Defendant" or "Advance"), employs over 51,000 people and operates 3,500 retail locations in the United States and in the Caribbean. [D.E. 54]. In each retail location,

a Store Manager supervises between ten and fifteen full-time and part-time hourly employees. [*Id.*]. Advance divides its retail locations into districts and assigns a District Manager to supervise the Store Managers within the relevant district. [*Id.*]. Asset Protection Managers further monitor Advance's retail locations by conducting announced or unannounced financial audits of the stores within the Asset Protection Manager's assigned territory. [*Id.*].

Plaintiff Frednel St. George (Black/Haitian) began working for Advance's predecessor, Discount Auto Parts, in 2000 as a Sales Associate. [D.E. 53]. He worked at several of Advance's locations and, in 2005, received a promotion to Store Manager. [*Id.*]. As a Store Manager, St. George's duties included supervising the store's overall operations, training, supervising, hiring and disciplining team members, ensuring customer satisfaction, maximizing profitability through sales, payroll, inventory, cost control, and complying with all company policies and procedures. [*Id.*]. In 2007, St. George began reporting to Phil Bean (White/American) after Bean was promoted to District Manager. Bean gave St. George a raise on March 30, 2008, paying him the maximum amount allowed under the company's guidelines. [*Id.*].

On April 7, 2008, Bean gave St. George a "letter of commitment" notifying St. George that an upcoming work schedule for his store exceeded its allotted payroll for the week and indicating that hours needed to be trimmed from the schedule. [D.E. 54]. St. George addressed the issue and it had no adverse effect on his employment. The letter of commitment did not go into his personnel file. [*Id.*].

Later that month, St. George was held at gunpoint when his store was robbed. [*Id.*]. He requested to be transferred to a different store, but Advance did not transfer him. Gloria Duque (White/Columbian) also worked at St. George's store at the time of the robbery and was granted a transfer to the Boca Raton location. St. George alleges that she was treated more favorably than he was because she was given a transfer. [D.E. 89]. However, Advance states that it re-hired Duque with the understanding that she would shortly thereafter be assigned to the Boca Raton location as its Store Manager, and there were no open Store Manager positions at the time St. George requested the transfer. [D.E. 54]. No other Store Managers in Bean's district have received a transfer following a robbery, although Store Manager Angelo Jean Hilaire (Black/Haitian American) did receive a transfer to a store closer to his home. [*Id.*].

During his employment with Advance, St. George alleges that Bean yelled at him in front of customers and employees regarding the condition of his store on one occasion. [*Id.*]. Bean denies this claim, stating that he does recall walking through St. George's store with him and pointing out numerous things that needed improvement, in the same manner that he does with other Store Managers. [*Id.*]. We assume on summary judgment that St. George's version of these events is true.

In September 2008, Fernando Rondinoni, an Asset Protection Manager, conducted a routine inventory of St. George's store and discovered that St. George had been violating Advance's cash handling policy for several months. [*Id.*]. When a manager removes cash from a register for a store-related purpose, the manager must provide a receipt for the exact amount of the transaction. This procedure is called a

3

"paid-out." [*Id.*]. If there is change from the transaction, it must be returned to the register and electronically recorded on the register. In an interview following the inventory, St. George told Rondinoni that he used money from the registers to purchase meals for his employees. [*Id.*]. St. George said that he purchased 30-40 meals from a Haitian restaurant which, according to St. George, does not give receipts. However, after Rondinoni interviewed several other employees, he became suspicious of the number of meals St. George claimed to have purchased. Most of the employees interviewed only recalled one or two meals where pizza was served, although one employee remembered receiving five to ten lunches in the last 90 days. [*Id.*]. Nearly all of the expenses were in even dollar amounts. St. George also admitted to putting change back into the registers without documenting the transactions which violates another of Advance's policies. The transactions totaled approximately $500 in the 90-day period preceding the inventory, and over $1,400 in the eight-month period prior to the inventory. [*Id.*]. Because of the violations of company policy, St. George's employment was terminated. [*Id.*].

St. George claims that Advance discriminated against him on the basis of his race and national origin because of the "letter of commitment," the denial of the transfer, the fact that Bean yelled at him in front of others, and his termination for violating Advance's cash-handling policies. [*Id.*].

## II.   APPLICABLE LAW

A.   *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is not genuinely disputed must support that assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials; or showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1).

However, "in determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine material fact and that it is entitled to judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As such, the court must resolve all reasonable doubts in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue

for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986); *Gonzalez v. Lee County Hous. Auth*, 161 F.3d 1290, 1294 (11th Cir. 1998). Further, "this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 106 S. Ct. at 2510. Likewise, a court need not permit a case to go to a jury when the inferences that are drawn from the evidence, and upon which the non-movant relies, are "implausible." *Matsushita*, 475 U.S. at 592-94; *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

### B.  *Statutory Framework*

In this case, the Plaintiff's claims of race and national origin discrimination arise under the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes ("FCRA"). The FCRA is patterned after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"); therefore, federal case law dealing with Title VII applies to employment discrimination cases brought under the FCRA. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *Florida Dep't of Cmty. Affairs v. Bryant*, 586 So. 2d 1205, 1208 (Fla. 1st DCA 1991). Accordingly, this Court will begin by analyzing the Plaintiff's FCRA claims of race and national origin discrimination under the framework for Title VII discrimination claims established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

### C.     *The Burden*

In a Title VII claim, a plaintiff may establish employer discrimination by providing the Court with either direct or indirect evidence of the alleged discrimination. *Hill v. Metro. Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1539 (11th Cir. 1988). A plaintiff may "present direct evidence of discriminatory intent in the form of actions or remarks of the employer reflecting a discriminatory attitude." *Id.* "Direct evidence is that which shows an employer's discriminatory intent without any inference or presumption." *Hinson v. Clinch County*, 231 F.3d 821, 827 (11th Cir. 2000) (internal quotation marks omitted). However, "only the most blatant remarks whose intent could be nothing other than to discriminate" will constitute direct evidence of discrimination. *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).

Absent direct evidence of an employer's discriminatory intent, this Court recognizes a burden-shifting analysis for Title VII discrimination claims based on circumstantial evidence. *McDonnell*, 411 U.S. at 802; *See also Carter*, 870 F.2d at 582. The plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *Id.* at 802. Under the *McDonnell Douglas* framework, "a plaintiff establishes a *prima facie* case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subject to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Where a plaintiff successfully establishes a *prima facie* case of discrimination, the evidence "creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981). The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason to rebut the presumption of discrimination. *Id*. "To accomplish this, the defendant must clearly set forth . . . the reasons for the plaintiff's rejection," but notably, the burden requires only production and not persuasion. *Id*.

Once a defendant produces a legitimate, nondiscriminatory reason for its action, the burden again shifts back to the plaintiff to "demonstrate that the proffered reason was not the true reason for the employment decision."*Id*. at 256. The plaintiff's burden of undermining the employer's proffered reason thus "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Id*. A plaintiff may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.*

However, if the plaintiff cannot identify a similarly situated employee outside of their protected class who was treated more favorably as required by *the McDonnell Douglas* framework, the plaintiff will still be able to avoid summary judgment by supplying the court with sufficient evidence to create an inference of discrimination. The inability to identify a comparator "does not necessarily doom the plaintiff's case." *Smith v. Lockheed Martin Corp.,* 644 F.3d 1321, 1328 (11th Cir. 2011). In *Lockheed*, the court held that the *McDonnell Douglas* framework is not the only way in which a

plaintiff can establish a triable issue of fact. Instead, the plaintiff can survive summary judgment by presenting a "convincing mosaic of circumstantial evidence that would allow the jury to infer discrimination." *Id* . (*quoting Silverman v. Bd. of Educ.,* 637 F.3d 729,734 (7th Cir. 2011)).

### III.   ANALYSIS

#### A.   *Plaintiff's Prima Facie Case*

St. George clearly meets the requirements for the first and fourth prongs of the *McDonnell Douglas* test to establish a *prima facie* case of discrimination based on race and/or national origin: (1) St. George is a member of a protected class as he is Black and is of Haitian national origin; and (4) St. George was qualified for his position. The Defendant does not contest the first and fourth prongs of the *prima facie* case, and the Court will accordingly limit discussion to the second and third prongs of the *McDonnell Douglas* test.

##### 1.   *Plaintiff's Termination Constitutes an Adverse Employment Action For the Purposes of the Prima Facie Case*

The second prong of the *McDonnell Douglas* test requires that the plaintiff suffer an adverse job action to establish a *prima facie* case of discrimination. *Holifield,* 115 F.3d at 1562. Although St. George makes several allegations that Defendant's discrimination resulted in adverse job actions, only St. George's eventual termination constitutes an adverse job action for the purposes of the *McDonnell Douglas* test and the establishment of his *prima facie* case.

First, "not all conduct by an employer negatively affecting an employee constitutes an adverse employment action" for the purposes of establishing a *prima facie* case of discrimination. *Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1238 (11th Cir. 2001). For a plaintiff to establish a *prima facie* case of discrimination, and to then succeed on discrimination claim, an employee must show that the employment decision seriously and materially affected the terms of her employment. *Id.* at 1239.

Second, if the employer's alleged discriminatory action falls short of an ultimate employment decision, the conduct must substantially "alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (internal quotation marks omitted). As such, if a plaintiff alleges discrimination with regards to an employment decision that falls short of termination, the Eleventh Circuit requires an employee to "demonstrate she suffered a *serious and material* change in the terms, conditions, or privileges of employment to show an adverse employment action." *Id.* at 971.

The Defendant's actions in April 2008 fail to constitute an adverse job action for the purposes of the *prima facie* case. In April 2008, St. George's upcoming payroll would have exceeded his allotted payroll hours. In response to this infraction, Bean sent St. George a "letter of commitment"; however, the Defendant did not save the letter in St. George's personnel file. St. George argues evidence that three Black Store Managers each received a similar warning, including plaintiffs Dorvil, St. George, and Ganpath, while only two White Store Managers received such warnings demonstrates

that Bean targeted Black Store Managers. This showing of evidence does not persuade the Court given that the Defendant employs a computer-generated system for determining payroll hour allocations and given the statistical insignificance between the numbers two and three.

The Defendant's failure to grant St. George's request for a transfer does not constitute an adverse employment action for the purposes of establishing a *prima facie* case. St. George alleges that there is a factual dispute regarding how many times he requested a transfer; St. George claims he requested a transfer on three occasions, while Bean states that he only made such a request once. St. George argues that this factual dispute alone is enough to allow the case to reach a jury. However, failure to grant a transfer constitutes neither an ultimate employment decision nor a serious and material alteration of the terms, conditions, and privileges of St. George's employment, and therefore is not an adverse employment action for the purpose of establishing a *prima facie* case. Because failure to grant a transfer is not relevant to St. George's *prima facie* case, St. George's argument that the case should survive summary judgment on the basis of this non-material factual dispute fails.

The Defendant's actions in yelling at St. George regarding the condition of his store does not constitute an adverse employment action for the purposes of the *prima facie* case. It is not an ultimate employment decision, nor does it seriously and materially alter the terms, conditions, and privileges of St. George's employment.

The Defendant's eventual termination of St. George constitutes an adverse employment action for the purposes of the *prima facie* case. Unquestionably, the

termination seriously and materially altered St. George's terms, conditions, and privileges of employment. Thus, at least with respect to his termination, St. George satisfies the second prong of the *McDonnell Douglas* framework for the purposes of establishing a *prima facie* case of discrimination.

### 2. *Plaintiff Failed to Identify a Similarly Situated Employee Outside his Class that the Defendant Treated More Favorably*

The third prong of the *McDonnell Douglas* framework requires that the plaintiff identify a similarly situated employee outside of the plaintiff's protected class that the employer treated more favorably. *Holifield*, 115 F.3d at 1562. St. George fails to identify such a similarly situated employee for the purpose of establishing his *prima facie* case.

In order to satisfy the third prong of the *McDonnell Douglas* framework and to establish a *prima facie* case, the comparator's conduct must be nearly identical to the plaintiff's conduct in all relevant aspects to prevent the Court from second-guessing the wisdom of an employer's legitimate business decision. *Jiles v. United Parcel Serv., Inc.*, 360 F. App'x. 61, 65 (11th Cir. 2010). When comparing the conduct of the plaintiff with the alleged similarly situated individual, the court must consider the nature of the offenses committed and the nature of the punishment imposed on each of the employees. *Marshall v. Mayor & Alderman of City of Savannah, Ga.*, 366 F. App'x 91, 98 (11th Cir. 2010) (finding that a female firefighter failed to identify any other employee that had engaged in the same behavior and thus failed to demonstrate any disparate punishment).

Hence, in determining whether employees are similarly situated in cases involving allegedly discriminatory discipline, the Court evaluates "whether the employees [were] involved in or accused of the same or similar conduct and [were] disciplined in different ways." *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted). The "quantity and quality" of the comparator's misconduct must be "nearly identical" to the plaintiff's misconduct, in order "to prevent courts from second-guessing employers' reasonable decisions." *Id.* (citation omitted). Courts in this district have found that similarly situated employees "must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating conduct that would distinguish their conduct or the appropriate discipline for it." *Cabrera v. LaHood,* 2011 WL 2600705, *8 (S.D. Fla. June 29, 2011) (quoting *Mazzella v. RCA Global Commc'ns, Inc.,* 642 F. Supp. 1531, 1547 (S.D.N.Y.1986)); *see also Sanguinetti v. United Parcel Serv., Inc.,* 114 F. Supp. 2d 1313, 1317 (S.D. Fla. 2000).

St. George fails to identify a comparator that is similarly situated to himself in all relevant aspects. To satisfy the similarly situated prong, St. George must identify a Store Manager outside of his protected class who committed infractions identical to those committed by St. George and yet received disparate punishment. More specifically, St. George must identify a non-Black/non-Haitian Store Manager who engaged in violations of company policy regarding "paid-outs" and who was not then terminated by the Defendant for those infractions.

13

Neither Advance nor St. George is aware of any other Store Manager in Bean's district who violated the company policy for "paid-outs." Thus, there are no comparators that St. George can use for the purpose of establishing that Bean treated other employees outside the protected class more favorably. Rondinoni, on the other hand, was involved in the termination of a person outside of St. George's protected class for the same violation of company policy. In April 2007, Rondinoni was a part of the decision to terminate Emily Rosado (White/Hispanic) for a $50 paid-out violation. Rosado's $50 dollar paid-out was substantially less than the $1,400 in paid-out violations accumulated by St. George. Thus, Advance has established that it fires employees outside of St. George's protected class for lesser violations of the same company policy. St. George is ultimately unable to identify a suitable comparator and, therefore, fails to establish a *prima facie* case under the *McDonnell Douglas* framework.

### B. If Plaintiff Had Established a Prima Facie Case, the Defendant Proffered a Legitimate, Nondiscriminatory Reason for its Employment Decision That Has Not Been Shown to Be Pretextual

Even if the Plaintiff was able to establish a *prima facie* case of discrimination, the Defendant proffers a legitimate, nondiscriminatory reason for effecting St. George's termination. St. George admitted that he was in violation of Advance's company policy. By failing to provide receipts when he removed money and failing to record the change he put back into the register, St. George committed violations of policy which entitled Advance to end his employment. Simply put, the Defendant made a business decision to terminate a Store Manager who failed to uphold company policy. Because the

14

*McDonnell Douglas* framework requires only the production of a legitimate, nondiscriminatory reason for its employment decision, the Defendant has satisfied this burden.

Finally, St. George offers no evidence demonstrating that the reason given for his termination was merely pretext for discrimination. Under the *McDonnell Douglas* framework, an employee retains the ultimate burden of persuading the court by a preponderance of the evidence of an employer's intentionally discriminatory conduct. *Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). St. George must provide probative circumstantial evidence to prove the pretextual nature of Advance's employment action by "discredit[ing] in the mind of a reasonable juror all of the defendant's proffered nondiscriminatory reasons for its actions." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997). However, where an employer offers objective evidence supporting its explanation, an employee's submissions of conclusory allegations do not and cannot establish pretext. *Young*, 840 F.2d at 830.

St. George does not establish that the reasons proffered by the Defendant merely represent pretext for discrimination. St. George argues that Bean had instructed him to occasionally reward the employees with lunches so Bean, therefore, had knowledge of St. George's conduct. However, there is no evidence that Bean's instruction to purchase lunches also amounted to his knowledge and approval of the violations of Advance's policy on paid-outs. St. George was clearly in violation of Advance's company policy, and St. George fails to offer the Court any convincing arguments as to why his termination should more properly be construed as the result of discrimination rather

than the result of his violation of company policy. A reasonable juror could not find otherwise on this record; therefore St. George's ultimate burden of demonstrating discriminatory intent cannot be satisfied as a matter of law.

We add that St. George's contrary and sincere belief that discrimination occurred does not alter the result under Eleventh Circuit law. His "opinion [that he was discriminated against], without more, is not enough to establish a prima facie case of race discrimination." *Holifield,* 115 F.3d at 1564; *see also Mack v. St. Mobile Aerospace Engineering, Inc.*, 195 F. App'x. 829, 844 (11th Cir. 2007). Indeed, "[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253, 1266 (11th Cir. 2010). And because Defendant has the "right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Nix v. WLCY Radio/Rahall Commc'ns,* 738 F.2d 1181, 1187 (11th Cir. 1984), while its decision to terminate St. George may have been harsh and even erroneous there is insufficient credible evidence from which a jury can infer that it was discriminatory. *See id.*

### C. There is No Other Evidence Sufficient to Create an Inference of Discrimination

"Establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case," *Smith,* 644 F.3d at 1328. Therefore, St. George can still establish a triable issue of fact by presenting the court

16

with evidence sufficient to create an inference of discrimination even though he is unable to establish the existence of a similarly situated comparator. However, St. George fails to present the "convincing mosaic of evidence" that *Lockheed* requires in order to avoid summary judgment. *Id.*

St. George argues that an inference of discrimination is created by the fact that Bean faced no disciplinary action for the paid-out violations taking place in St. George's store. However, the record only shows that Bean encouraged St. George to purchase occasional lunches for the employees. The record does not indicate that Bean knew St. George was acting in violation of Advance's policy, nor does St. George claim as much. It only became apparent that the violations were occurring when Rondinoni detected the transactions during a routine inventory. The record further shows that the number of lunches that St. George claimed to have purchased for employees was suspect. Ultimately, St. George admitted to the violations, and this knowing violation of company policy defeats St. George's attempts to pin the blame on his superior. At all times, St. George, as Store Manager, was charged with acting in accordance with Advance's company policy. Thus, St. George's allegation that purchasing meals was done in response to instruction from Bean fails to create an inference of discrimination.

Finally, St. George argues that the fact that numerous Black employees were terminated in Bean's district while he was the District Manager suggests that there was a discriminatory motivation behind the Defendant's conduct. However, the record shows that Bean also fired numerous people outside of the Plaintiff's protected class for various violations of company policy or poor performance. Meanwhile, he promoted

17

Blacks and Haitians to managerial positions. During his time as District Manager, Bean terminated Brian Smiddy (White/German), John Dettman (White/American), and Patrick Cheung (Asian/American). Around the same time that St. George received his letter of commitment, Ed Bila (White/American) and Gloria Duque (White/Columbian) received similar letters. Bean also was involved in the demotion of Duque and Conroy Casella (White/American). Moreover, Bean promoted Angelo Jean Hilaire (Black/Haitian), Olatubosun Oderinu (Black/Nigerian), and Melissa Rawls (Black/American) to Store Manager positions. In fact, Bean promoted Hilaire to Store Manager as St. George's replacement.

Because St. George was replaced by a member of his protected class, it contradicts any inference that his employment was terminated on the basis of race or national origin. Finally, St. George received a raise from Bean to the highest amount permissible under Advance's guidelines. The record simply does not establish a genuine issue of fact that Bean tended to subject Black or Haitian employees to worse treatment than employees outside the protected class, as St. George alleges.

The evidence presented to the Court falls short of creating a "convincing mosaic of circumstantial evidence" sufficient to establish an inference of discrimination, especially in light of the fact that St. George was replaced by a manager of the same race and national origin as himself. In *Smith*, the Eleventh Circuit found that a convincing mosaic of evidence was created in light of (1) the backdrop of racial tension in the company following a workplace shooting, (2) a listing of employees by name and race created for use while making disciplinary decisions, and (3) an upcoming news

program portraying Lockheed's struggles with racism in an unflattering light. Here, by contrast, the evidence presented by St. George cannot compare to the substantial discriminatory record present in *Lockheed,* and fails to create an inference of discrimination sufficient to survive summary judgment.

### IV.   CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** that Defendant Advance Stores Company, Inc. d/b/a Advance Auto Parts' Final Summary Judgment Motion [D.E. 53] is **GRANTED**.  Judgment shall be entered by separate Order in favor of Defendant and against Plaintiff Frednel St. George.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of December, 2011.

/s/   *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge