## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 10-60036-Civ-TORRES

CONSENT CASE

KALIPERSAD GANPATH,

      Plaintiff,

vs.

ADVANCE STORES COMPANY,
INC., d/b/a ADVANCE AUTO PARTS,

      Defendants.

_____/

## ORDER GRANTING DEFENDANT'S
## MOTION FOR FINAL SUMMARY JUDGMENT

This matter is before the Court on Defendant Advance Stores Company, Inc.,

d/b/a Advance Auto Parts' Motion for Summary Judgment with Incorporated

Memorandum of Law as to Plaintiff Ganpath's claims [D.E. 55]. The Court has

reviewed the motion, response, reply, relevant authorities, supplemental filings, and

record evidence submitted in support for or in opposition to the motion. Based upon a

thorough review of the record, we find that there are no genuine issues of material fact

to preclude final summary judgment. For the following reasons, the final summary

judgment motion will be **GRANTED**.

### I.  BACKGROUND

Defendant, Advance Stores Company, Inc., d/b/a Advance Auto Parts

("Defendant" or "Advance"), employs over 51,000 people and operates 3,500 retail

locations in the United States and in the Caribbean. [D.E. 56]. In each retail location, a Store Manager supervises between ten and fifteen full-time and part-time hourly employees. [*Id.*]. Advance divides its retail locations into districts and assigns a District Manager to supervise the Store Managers within the relevant district. [*Id.*]. Asset Protection Managers further monitor Advance's retail locations by conducting announced or unannounced financial audits of the stores within the Asset Protection Manager's assigned territory. [*Id.*].

Plaintiff Kalipersad Ganpath (Black/Trinidadian) began working for Advance's predecessor, Discount Auto Parts, in 1991 as a Sales Associate. [D.E. 55]. In 2001, he voluntarily resigned. He was re-hired by Advance as a retail parts pro in 2003, and a year later was promoted to assistant manager. In 2005, he was promoted to Store Manager. [*Id.*]. As a Store Manager, Ganpath's duties included supervising the store's overall operations, training, supervising, hiring and disciplining team members, ensuring customer satisfaction, maximizing profitability through sales, payroll, inventory, cost control, and complying with all company policies and procedures. [*Id.*]. In 2007, Ganpath began reporting to Phil Bean (White/American) after Bean was promoted to District Manager. [*Id.*].

In 2007, Bean removed commercial parts delivery from Ganpath's store. Bean states that he made this decision for the business reason of improving Ganpath's performance and his store's profitability. [D.E. 55]. However, Ganpath claims that he was expected to produce the same sales volume even without the commercial parts

delivery. [*Id.*]. In August 2007, Bean issued a letter of concern to Ganpath because his store had exceeded its allotted payroll. [*Id.*].

Advance conducts a yearly Customers are Coming ("CAC") inspection of each of its retail locations to ensure that each store conforms to Advance's performance and appearance standards. [D.E. 74]. Advance schedules CAC inspections far in advance, and requires a District Manager from another district to complete the inspection to prevent any possible bias. [*Id.*]. In January 2008, District Manager Alex Galnares (White/Hispanic) conducted a CAC of Ganpath's store. His store receiving a failing score of 77%. [D.E. 55].

The same month, Fernando Rondinoni (White/Argentinian), an Asset Protection Manager, conducted an unannounced audit of Ganpath's store. [*Id.*]. Bean was unaware that the audit would take place. Rondinoni found that Ganpath's store was not in compliance with company standards regarding the number of hours Ganpath claimed to be clocked in and the condition of the store's parking lot. [*Id.*].  In the parking lot, coolant was found leaking into drains and trash had accumulated in several places. Advance states that it received complaints from a neighbor of the store, and faced trouble with the Broward County Environmental Protection Agency as a result of the condition of the parking lot. [D.E. 67 ]. According to Advance, this was the only store to have ever had issues with the EPA. Ganpath admitted at his deposition that the parking lot did not comply with Advance's standards.

Following the issues with Ganpath's work performance, Bean met with Rondinoni and Human Resources Manager Tamara Colon (White/Puerto Rican) to

discuss disciplinary action. [*Id.*]. It was decided that Ganpath would not be terminated in light of his lengthy employment history with Advance. Instead, Ganpath was demoted to the retail parts pro position, and was transferred to another location where he began reporting to Store Manager Angelo Jean Hilaire (Black/Haitian). [*Id.*].

After his demotion, Ganpath complained about his $12 per hour compensation, and Bean agreed to raise his pay to $15 per hour. [*Id.*]. Ganpath also complained that he did not receive a bonus to which he was entitled from his work as Store Manager. Eventually, Ganpath received the bonus after he called the mistake to management's attention and the necessary re-calculations were performed in light of the removal of commercial parts delivery. [D.E. 54].

Following the demotion, Ganpath had several incidents of insubordination. [D.E 55]. He received two disciplinary warnings from Hilaire after he refused directives from store management, and he had two altercations with second assistant managers. [*Id.*]. Following another incident of insubordination, Hilaire terminated Ganpath's employment with Advance. Two weeks later, after speaking with Ganpath, Bean confirmed the decision. [*Id.*].

Ganpath claims that Advance discriminated against him on the basis of his race and national origin because of the removal of commercial parts delivery from his store, the letter of concern, the failure to deliver a bonus, the audit of his store, the demotion and, finally, the termination. [*Id.*].

## II.   APPLICABLE LAW

### A.   <u>*Summary Judgment Standard*</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is not genuinely disputed must support that assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials; or showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1).

However, "in determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine material fact and that it is entitled to judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As such, the court must resolve all reasonable doubts in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue

5

for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986); *Gonzalez v. Lee County Hous. Auth*, 161 F.3d 1290, 1294 (11th Cir. 1998). Further, "this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 106 S. Ct. at 2510. Likewise, a court need not permit a case to go to a jury when the inferences that are drawn from the evidence, and upon which the non-movant relies, are "implausible." *Matsushita*, 475 U.S. at 592-94; *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

### B.    *Statutory Framework*

In this case, the Plaintiff's claims of race and national origin discrimination arise under the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes ("FCRA"). The FCRA is patterned after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"); therefore, federal case law dealing with Title VII applies to employment discrimination cases brought under the FCRA. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *Florida Dep't of Cmty. Affairs v. Bryant*, 586 So. 2d 1205, 1208 (Fla. 1st DCA 1991). Accordingly, this Court will begin by analyzing the Plaintiff's FCRA claims of race and national origin discrimination under the framework for Title VII discrimination claims established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

### C. *The Burden*

In a Title VII claim, a plaintiff may establish employer discrimination by providing the Court with either direct or indirect evidence of the alleged discrimination. *Hill v. Metro. Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1539 (11th Cir. 1988). A plaintiff may "present direct evidence of discriminatory intent in the form of actions or remarks of the employer reflecting a discriminatory attitude." *Id.* "Direct evidence is that which shows an employer's discriminatory intent without any inference or presumption." *Hinson v. Clinch County*, 231 F.3d 821, 827 (11th Cir. 2000) (internal quotation marks omitted). However, "only the most blatant remarks whose intent could be nothing other than to discriminate" will constitute direct evidence of discrimination. *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).

Absent direct evidence of an employer's discriminatory intent, this Court recognizes a burden-shifting analysis for Title VII discrimination claims based on circumstantial evidence. *McDonnell*, 411 U.S. at 802; *See also Carter*, 870 F.2d at 582. The plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *Id.* at 802. Under the *McDonnell Douglas* framework, "a plaintiff establishes a *prima facie* case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subject to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Where a plaintiff successfully establishes a *prima facie* case of discrimination, the evidence "creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981). The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason to rebut the presumption of discrimination. *Id*. "To accomplish this, the defendant must clearly set forth . . . the reasons for the plaintiff's rejection," but notably, the burden requires only production and not persuasion. *Id*.

Once a defendant produces a legitimate, nondiscriminatory reason for its action, the burden again shifts back to the plaintiff to "demonstrate that the proffered reason was not the true reason for the employment decision."*Id*. at 256. The plaintiff's burden of undermining the employer's proffered reason thus "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Id*. A plaintiff may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*.

However, if the plaintiff cannot identify a similarly situated employee outside of their protected class who was treated more favorably as required by *the McDonnell Douglas* framework, the plaintiff will still be able to avoid summary judgment by supplying the court with sufficient evidence to create an inference of discrimination. The inability to identify a comparator "does not necessarily doom the plaintiff's case." *Smith v. Lockheed Martin Corp.,* 644 F.3d 1321, 1328 (11th Cir. 2011). In *Lockheed*, the court held that the *McDonnell Douglas* framework is not the only way in which a

8

plaintiff can establish a triable issue of fact. Instead, the plaintiff can survive summary judgment by presenting a "convincing mosaic of circumstantial evidence that would allow the jury to infer discrimination." *Id* . (*quoting Silverman v. Bd. of Educ.,* 637 F.3d 729,734 (7th Cir. 2011)).

## III.   ANALYSIS

### A.   *Plaintiff Did Not Properly Preserve a National Origin Claim*

The Plaintiff did not properly assert his national origin discrimination claims, as Defendant maintains, based upon his failure to exhaust administrative remedies before the EEOC.

There is no dispute that a federal court must enforce the "requirement of exhaustion of administrative remedies" before a plaintiff may properly assert a discrimination claim. *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985). The requirement "is satisfied when the issues (a) are expressly raised in the pleadings before the administrative agency, (b) might reasonably be expected to be considered in a diligent investigation of those expressly raised issues, or (c) were in fact considered during the investigation." *Id.*

Following the exhaustion of administrative remedies "after a party has filed a Charge with the EEOC, any subsequent judicial proceeding is limited by the nature of the Charges filed with the EEOC." *Lieberman v. Miami-Dade County*, Case No. 99-1714, 2000 WL 1717649, *4 (S.D.Fla. Aug. 16, 2000). Although "a court should apply a 'liberal' standard when considering the relationship between an EEOC Charge and

a judicial complaint, a claimant's lack of specificity in an EEOC Charge precludes the claimant from later seeking judicial relief." *Id.*

For example, in *Griffin,* the plaintiff's administrative complaint charged racial discrimination alleging that the post office systematically excluded qualified blacks from training, development, and opportunities for promotion within the administration. *Griffin*, 755 F.2d at 1522. The District Court dismissed the plaintiff's challenge to the post office's administration of written tests to determine candidates for advancement. The District Court concluded that the plaintiff's judicial challenge to the written tests fell outside of the scope of "the administrative investigation which could be reasonably expected to grow out of the charge of discrimination." *Id.* However, the Eleventh Circuit reversed the order and remanded for consideration of the claim. The Eleventh Circuit reasoned that "written examinations were an integral part of the promotional scheme" and held that "[plaintiff's] complaint clearly challenged aspects of defendant's employment practices which would reasonably include testing." *Id.*

Also, the Fifth Circuit has held that technical defects, such as failure to check a box on a form, will not bar a plaintiff's discrimination claim. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970). In *Sanchez,* the plaintiff filed a charge of discrimination with the EEOC by completing a Charge form. The form "calls for the complainant to specify whether the discrimination alleged was 'because of' (a) 'race or color,' (b) 'religious creed,' (c) 'national origin' or (d) 'sex'; a row of boxes is provided–one for each category of discrimination." *Id.* at 458. In this case, the complainant checked only the box labeled "sex." *Id.* The complainant later amended her charge of

10

discrimination and checked the boxes labeled "sex" and "national origin." *Id.* However, the plaintiff amended her complaint after the ninety-day period allowed for such amendments. *Id.* Nevertheless, the Fifth Circuit concluded that the "[plaintiff's] failure to check the box labeled 'national origin' was a mere 'technical defect or omission'" and would not bar the plaintiff from presenting the claim of national origin discrimination to the Court. *Id.* at 462. The Fifth Circuit reasoned that "the provisions of Title VII were not designed for the sophisticated or the cognoscenti, but to protect equality of opportunity among all employees and prospective employees." *Id.* at 463.

Notably, the Court identified three reasons why a charging party might fail to check the correct box on the EEOC charge form: (1) the charging party may be unaware of the employer's motivation for perpetrating the "unfair thing" done to him, (2) the charging party may not understand the distinction between an act motivated by different kinds of discrimination, and (3) the charging party may be unschooled in the use of forms. *Id.* at 462-63. The Court goes on to state that none of the aforementioned reasons "should cut off the charging party's rights." *Id.* at 462.

However, courts have found that technical defects, such as failure to check a box, will bar discrimination claims when the later claim cannot fairly be expected to prompt an EEOC investigation based on the original charge form and there was no subsequent effort to amend the charge. *Gaston v. Home Depot USA Inc.*, 129 F. Supp. 2d 1355, 1365 (S.D. Fla. 2001). In *Gaston*, the court found that, "nothing in Plaintiff's EEOC filing reflects an intention to pursue a claim of national origin discrimination. In fact, Plaintiff was quite clear that his claim was based on race, and it is not reasonable to

expect that the subsequent EEOC investigation would also embrace national origin." *Id*.

In the present case, like the plaintiff in *Gaston*, Ganpath failed to check the box labeled "national origin" on the EEOC Charge form, and only checked the box labeled "race." [D.E 64]. In response to the EEOC Charge form's prompt to provide a description of the discrimination, Ganpath's comments only indicated that he believed he was being discriminated against based on his race. There was no mention of anything pertaining to national origin nor any reference to Ganpath's Trinidadian background. He compared the manner in which he was treated only to the treatment of "white employees," and not to employees of different national origins. [D.E 64].

This Court must employ liberal standards in determining the relationship between the EEOC charge and the plaintiff's later judicial complaint.  However, where there is no indication whatsoever of national origin discrimination in the charge, there is no reason that the EEOC investigation would have addressed issues pertaining to national origin discrimination. Unlike *Sanchez*, there was no later attempt to amend the EEOC charge to include national origin discrimination. Ganpath's EEOC charge claimed only racial discrimination. Therefore, Ganpath failed to adequately assert his claims of national origin discrimination in his EEOC Charge, and the Court can only address Ganpath's claims originating from racial discrimination.[1]

---

[1]    For the reasons that follow, however, even if he had asserted and preserved a national origin claim in this case the outcome would likely have been the same as the resolution of his race claim.

### B.   _Certain Aspects of Plaintiff's Race Claim Are Time Barred_

The FRCA requires complaints to be filed within 365 days of the discriminatory conduct. § 760.11(1). Fla. Stat. (1999). Because the FRCA is patterned after Title VII, federal case law dealing with Title VII applies. The Supreme Court has held that the limitations period begins running at the time the employee is notified that the decision was made to engage in the discriminatory employment practice, not when the effects of the decision began. _Delaware State College v. Ricks_, 449 U.S. 250, 259 (1980).

In this case, Ganpath was notified of the decision to remove commercial parts delivery from his store and given the letter of concern in August 2007. Ganpath filed his charge in January 2009. Thus, discrimination claims in his charge occurring prior to January 2008 are time barred given the 365-day limitations period. The decision to remove the commercial part delivery and the letter of concern took place outside the 365-day limitation period, and Ganpath's claims relating to these issues are, therefore, are time barred.

### C.   _Plaintiff's Prima Facie Case_

Ganpath clearly meets the requirements for the first and fourth prongs of the _McDonnell Douglas_ test to establish a _prima facie_ case of discrimination based on race: (1) Ganpath is a member of a protected class as he is Black; and (4) Ganpath was qualified for his position. The Defendant does not contest the first and fourth prongs of the _prima facie_ case, and the Court will accordingly limit discussion to the second and third prongs of the _McDonnell Douglas_ test.

### 1. Plaintiff's Termination Constitutes an Adverse Employment Action For Purposes of the Prima Facie Case

The second prong of the *McDonnell Douglas* test requires that the plaintiff suffer an adverse job action to establish a *prima facie* case of discrimination. *Holifield*, 115 F.3d at 1562. Although Ganpath makes several allegations that Defendant's discrimination resulted in adverse job actions, only Ganpath's eventual termination constitutes an adverse job action for the purposes of the *McDonnell Douglas* test and the establishment of his *prima facie* case.

First, "not all conduct by an employer negatively affecting an employee constitutes an adverse employment action" for the purposes of establishing a *prima facie* case of discrimination. *Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1238 (11th Cir. 2001). For a plaintiff to establish a *prima facie* case of discrimination, and to then succeed on discrimination claim, an employee must show that the employment decision seriously and materially affected the terms of her employment. *Id.* at 1239.

Second, if the employer's alleged discriminatory action falls short of an ultimate employment decision, the conduct must substantially "alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (internal quotation marks omitted). As such, if a plaintiff alleges discrimination with regards to an employment decision that falls short of termination, the Eleventh Circuit requires an employee to

"demonstrate she suffered a *serious and material* change in the terms, conditions, or privileges of employment to show an adverse employment action." *Id.* at 971.

The Defendant's delay in granting Ganpath the bonus does not constitute an adverse job action for the purposes of the *prima facie* case. When Ganpath did not receive a bonus, he spoke to Bean and other management about the issue. Advance uses automatic calculations to determine Store Manager bonuses. Apparently, there was a mistake in the calculations when the commercial delivery program was not taken out of the store budget. However, once the calculations were re-done and corrected, Ganpath received the bonus. The error in calculation and resulting delay in payment of the bonus do not constitute a serious and material alteration of the terms, conditions, and privileges of Ganpath's employment. Therefore, the issue regarding the bonus does not constitute an adverse employment action for the purpose of establishing a *prima facie* case.

The January 2008 audit does not constitute an adverse employment action. Ganpath claims that Bean "had the store subjected to a series of audits." [D.E. 84]. However, Bean had no prior knowledge of Rondinoni's audit. Rondinoni stated that he conducted the audit based on its "high shrink," which can be an indicator of poor store performance. [D.E 72]. Because the audit was a routine measure undertaken to ensure that the store was meeting the Minimally Acceptable Performance Standards required by Advance, it does not constitute a serious and material alteration of the terms, conditions, and privileges of Ganpath's employment. Thus, the audit is not an adverse employment action for the purpose of establishing a *prima facie* case.

The Defendant's decision to demote and then terminate Ganpath's employment with Advance does constitute an adverse employment action. Unquestionably, the demotion and termination seriously and materially altered Ganpath's terms, conditions, and privileges of employment. Thus, with respect to his demotion and termination, Ganpath satisfies the second prong of the *McDonnell Douglas* framework for the purposes of establishing a *prima facie* case of discrimination.

### 2.    *Plaintiff Failed to Identify a Similarly Situated Employee Outside his Class that the Defendant Treated More Favorably*

The third prong of the *McDonnell Douglas* framework requires that the plaintiff identify a similarly situated employee outside of the plaintiff's protected class that the employer treated more favorably. *Holifield*, 115 F.3d at 1562. Ganpaths fails to identify such a similarly situated employee for the purpose of establishing a *prima facie* case.

In order to satisfy the third prong of the *McDonnell Douglas* framework and to establish a *prima facie* case, the comparator's conduct must be nearly identical to the plaintiff's conduct in all relevant aspects to prevent the Court from second-guessing the wisdom of an employer's legitimate business decision. *Jiles v. United Parcel Serv., Inc.*, 360 F. App'x. 61, 65 (11th Cir. 2010). When comparing the conduct of the plaintiff with the alleged similarly situated individual, the court must consider the nature of the offenses committed and the nature of the punishment imposed on each of the employees. *Marshall v. Mayor & Alderman of City of Savannah, Ga.*, 366 F. App'x 91, 98 (11th Cir. 2010) (finding that a female firefighter failed to identify any other

employee that had engaged in the same behavior and thus failed to demonstrate any disparate punishment).

Hence, in determining whether employees are similarly situated in cases involving allegedly discriminatory discipline, the Court evaluates "whether the employees [were] involved in or accused of the same or similar conduct and [were] disciplined in different ways." *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted).  The "quantity and quality" of the comparator's misconduct must be "nearly identical" to the plaintiff's misconduct, in order "to prevent courts from second-guessing employers' reasonable decisions." *Id.* (citation omitted). Courts in this district have found that similarly situated employees "must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating conduct that would distinguish their conduct or the appropriate discipline for it." *Cabrera v. LaHood,* 2011 WL 2600705, *8 (S.D. Fla. June 29, 2011) (quoting *Mazzella v. RCA Global Commc'ns, Inc.,* 642 F. Supp. 1531, 1547 (S.D.N.Y.1986)); *see also Sanguinetti v. United Parcel Serv., Inc.,* 114 F. Supp. 2d 1313, 1317 (S.D. Fla. 2000).

Ganpath fails to identify a comparator that is similarly situated to himself in all relevant aspects. To satisfy the similarly situated prong, Ganpath must identify a Store Manager outside of his protected class who committed infractions identical to those committed by Ganpath and yet received disparate punishment. More specifically, Ganpath must identify a non-Black Store Manager who failed a CAC, failed an audit,

was found to violate company policy by misrepresenting the hours he worked, failed to keep the parking lot up to company standards, and acted insubordinately, who was not demoted and eventually terminated by the Defendant.

Ganpath points to Ed Bila (White), Chase Ficarro (White), and John Dettman (White) as similarly situated employees. However, none of the three employees failed an audit, a CAC, and have the same issues with store condition and insubordination. Regarding Bila, prior to Bean taking over as District Manager, there were some issues with the condition of Bila's store. Following Bean's promotion to District Manager, Bean moved Bila to a lower volume store. Bila's conduct was much less serious and took place before Bean became District Manager, thus, Bila is not a similarly situated employee to Ganpath.

The same is true regarding Ficarro, who Ganpath asserts ran a store which was in poor condition. Ganpath's assertions regarding another manager's store are not nearly enough to make Ficarro similarly situated to Ganpath, given Ganpath's fairly prolonged series of employment issues. Finally, Dettman was ultimately fired for the condition of his store and poor performance. Thus, Dettman cannot be used to establish disparate treatment when he was subject to the same adverse employment action.

Further, Advance states that Ganpath's store was the only store that has ever had issues with the Broward County EPA, and the record indicates it had such issues on two occasions. Thus, there are no comparators that Ganpath can use for the purpose of establishing that other Store Managers with substandard parking lots were treated better. Therefore, Ganpath is ultimately unable to identify a suitable

comparator and, therefore, fails to establish a *prima facie* case under the *McDonnell Douglas* framework.

> **D.    If Plaintiff Had Established a Prima Facie Case, the Defendant Proffered a Legitimate, Nondiscriminatory Reason for its Employment Decision That Has Not Been Shown to Be Pretextual**

Even if the Plaintiff was able to establish a *prima facie* case of discrimination, the Defendant proffers a legitimate, nondiscriminatory reason for effecting Ganpath's termination. Ganpath failed the CAC conducted by Galanares, and failed the audit conducted by Rondinoni, which established that he was violating company policy by clocking himself in for too many hours and failing to maintain the condition of the parking lot. Simply put, the Defendant made a business decision to terminate a Store Manager who failed to uphold company policy. Because the *McDonnell Douglas* framework requires only the production of a legitimate, nondiscriminatory reason for its employment decision, the Defendant has satisfied this burden.

The burden then shifts to Ganpath, who must offer evidence demonstrating that the reason given for his termination was merely pretext for discrimination. Under the *McDonnell Douglas* framework, an employee retains the ultimate burden of persuading the court by a preponderance of the evidence of an employer's intentionally discriminatory conduct. *Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Ganpath must provide probative circumstantial evidence to prove the pretextual nature of Advance's employment action by "discredit[ing] in the mind of a reasonable juror all of the defendant's proffered nondiscriminatory reasons for its actions." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997). However, where an

employer offers objective evidence supporting its explanation, an employee's submissions of conclusory allegations do not and cannot establish pretext. *Young*, 840 F.2d at 830.

Ganpath does not establish that the reasons proffered by the Defendant merely represent pretext for discrimination. Ganpath argues that, despite the fact that he left work for hours while on the clock, he still exceeded the minimum number of hours required of Store Managers for the week. However, meeting basic job requirements does not excuse the violation of company policy. Ganpath also argues that he was not the one who poured coolant down the drain and he cannot stop customers from performing work on their cars in the parking lot, so the condition of the lot is not his responsibility. However, the fact that the EPA found it necessary to get involved, a neighbor complained about the problem, and no other store had ever dealt with the EPA issues, undermines Ganpath's argument that he was simply free of any involvement with these violations. A reasonable juror could not find otherwise on this record, therefore Dorvil's ultimate burden of demonstrating discriminatory intent cannot be satisfied as a matter of law.

We add that Dorvil's contrary and sincere belief that discrimination occurred does not alter the result under Eleventh Circuit law. Dorvil's "opinion [that he was discriminated against], without more, is not enough to establish a prima facie case of race discrimination." *Holifield,* 115 F.3d at 1564; *see also Mack v. St. Mobile Aerospace Engineering, Inc.*, 195 F. App'x. 829, 844 (11th Cir. 2007). Indeed, "[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt

about it, not on reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253, 1266 (11th Cir. 2010).   And because Defendant has the "right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Nix v. WLCY Radio/Rahall Commc'ns,* 738 F.2d 1181, 1187 (11th Cir. 1984), while its decision to terminate Ganpath may have been harsh and even erroneous there is insufficient credible evidence from which a jury can infer that it was discriminatory. *See id.*

Ganpath was clearly in violation of Advance's company policy, and he fails to offer the Court any tangible issue of fact as to why his termination should more properly be construed as the result of discrimination rather than the result of his violation of company policy.

### E.   *There is no Other Evidence Sufficient to Create an Inference of Discrimination*

"Establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case," *Smith,* 644 F.3d at 1328. Therefore, Ganpath can still establish a triable issue of fact by presenting the court with evidence sufficient to create an inference of discrimination even though he is unable to establish the existence of a similarly situated comparator. However, Ganpath failed to present the "convincing mosaic of evidence" that *Lockheed* requires in order to avoid summary judgment. *Id.*

Ganpath argues that the fact that numerous Black employees were terminated in Bean's district while he was the District Manager suggests that there was a discriminatory motivation behind the Defendant's conduct. However, the record shows that Bean also fired numerous people outside of the Plaintiff's protected class for various violations of company policy or poor performance. At the same time, he promoted Blacks to managerial positions. As District Manager, Bean terminated Brian Smiddy (White), John Dettman (White), and Patrick Cheung (Asian). Bean also was involved in the demotion of Gloria Duque (White) and Conroy Casella (White). Moreover, Bean promoted Angelo Jean Hilaire (Black), Olatubosun Oderinu (Black), and Melissa Rawls (Black) to Store Manager positions. The record simply does not establish that Bean tended to subject Black employees to worse treatment than employees outside the protected class, as Ganpath alleges.

The evidence presented to the Court falls short of creating a "convincing mosaic of circumstantial evidence" sufficient to establish an inference of discrimination. In *Smith*, the Eleventh Circuit found that a convincing mosaic of evidence was created in light of (1) the backdrop of racial tension in the company following a workplace shooting, (2) a listing of employees by name and race created for use while making disciplinary decisions, and (3) an upcoming news program portraying Lockheed's struggles with racism in an unflattering light. Here, by contrast, the evidence presented by Ganpath cannot compare to the substantial discriminatory record present in *Lockheed,* and fails to create an inference of discrimination sufficient to survive summary judgment.

### IV.   CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** that Defendant Advance Stores Company, Inc. d/b/a Advance Auto Parts' Final Summary Judgment Motion [D.E. 55] is **GRANTED**.  Judgment shall be entered by separate Order in favor of Defendant and against Plaintiff Kalipersad Ganpath.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of December, 2011.

_/s/    Edwin G. Torres_
EDWIN G. TORRES
United States Magistrate Judge